PEOPLE *v.* SHAWL.

FISH—GREAT LAKES—COVERED TRAP NETS.

Use, in waters of Lakes Michigan or Superior, of trap or submarine net 20 feet wide by 36 feet long and side walls 20 feet in depth and adapted for use in water to a depth of 80 feet, from which top had been removed and sidewalls extended and converged at surface of water where they were fastened to cedar frame leaving opening at top of but 64 square feet instead of 720 square feet *held*, violative of statute prohibiting use in such waters of trap nets having a covered crib or heart (Act No. 221, Pub. Acts 1935).

FEAD, C. J., dissenting.

Appeal from Emmet; George (Fred W.), J., presiding. Submitted January 14, 1937. (Docket No. 123, Calendar No. 39,092.) Decided April 29, 1937.

A. D. Shawl was convicted of catching fish contrary to Act No. 221, Pub. Acts 1935. Affirmed.

*Lewis E. Berry* and *B. H. Halstead,* for appellant.

*Raymond W. Starr,* Attorney General, and *Clyde Comstock,* Prosecuting Attorney, for the people.

NORTH, J. Appellant has appealed from his conviction, on trial before the court without a jury, of violating Act No. 221, Pub. Acts 1935, which regulates the taking of certain fish in the waters of Lake Michigan and Lake Superior. The pertinent part of the statute reads:

"It shall be unlawful for any person, firm, company, co-partnership, partnership, association or corporation to set or use any trap net, pound net *or other similar net having a covered crib or heart* for the purpose of taking fish in any of the waters of Lake Michigan * * * and in any of the waters of Lake Superior."

The only controverted question is whether the net used by appellant came within the prohibition of the statute in that it had "a covered crib or heart."

As originally constructed the net used by defendant was one known as a trap or submarine net. Such traps are adapted for use in water to a depth of 80 feet. Defendant's net was 20 by 36 feet with side walls 20 feet in depth, and it was covered over the top by netting. Obviously this net could not be lawfully used after the passage of Act No. 221, because it was a covered net. It is conceded that the use of

so-called pound nets is not violative of the quoted act.  A pound net is not a covered net, but instead the side walls extend straight up to a point three or four feet above the surface of the water where the upper edge is suspended by poles set in the lake. Nets supported by poles can be used only in water of a limited depth.  Defendant removed the top from his net, extended the side walls up to the surface of the water and there fastened the edge of the reconstructed net to a frame made of cedar lumber.  But this framework instead of being 20 feet wide by 36 feet long was only eight feet square.  The result was that the sides of defendant's net, instead of going straight up and leaving the net wholly uncovered, converged to the extent that the opening was only one of 64 square feet, instead of 720 square feet.  In other words slightly over 91 per cent. of the net's top area was covered by this method and less than nine per cent. left uncovered.  The circuit judge found that the net so constructed and used violated the statute and in his opinion very pertinently said:

"It can be readily understood that although at the water's edge, the opening of the modified trap was eight feet square, and there being no provision in the law for an opening of that area, operators adopting the same idea could prepare an opening of lesser area, which might finally be reduced to inches."

The reasoning and holding of the circuit judge was correct.  By enacting the statute it was clearly intended to prohibit the use of nets of this character which were covered to any substantial degree.  The method resorted to by defendant is violative of the purpose sought to be accomplished by the legislative act in that in practical effect his net, to the extent of 91 per cent., was a covered net.

Attempts to evade statutory regulations of this character are not uncommon. In a North Carolina case the defendant attempted an evasion of a statute which prohibited the use of gill nets more than 20 yards in length by cutting his nets into 20 yard lengths and then fastening them together but leaving a space of six inches between the respective sections. Notwithstanding each of the sections so used was within the limits provided by statute, a conviction was affirmed by the North Carolina supreme court which made reference to the reconstructed net as "rather a stupid device to evade the penalty of the statute." *State v. Woodard,* 123 N. C. 710 (31 S. E. 219). See, also, *State v. Figge,* 177 Minn. 483 (225 N. W. 430). Although defendant in the instant case made an unsuccessful attempt to circumvent the statute, the circuit judge found that defendant was not acting in bad faith, and in consequence thereof ordered that the net should not be confiscated and that sentence should be suspended. The conviction is affirmed.

WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred with NORTH, J.

FEAD, C. J. *(dissenting).* Act No. 221, Pub. Acts 1935, is a criminal statute and, therefore, must be strictly construed. Its purpose is to set up conditions under which fish may be captured by commercial fishermen for profit and it is to be read accordingly. It is not to be construed as providing a game of wits between fishermen and fish nor to make rules for a sport. The question is not whether defendant's net ought to be prohibited as favoring the fisherman but whether it is condemned by the act.

Mr. Justice NORTH construes the statute in connection with the "purpose sought to be accomplished

by the legislature," but fails to state the purpose. I assume that his conception of the purpose of the act is to give a captured fish a chance to escape over the top of the net. But this idea seems to be effectually negatived by the inclusion of pound nets in the prohibition against covering. Pound nets may extend from one to four feet above the surface of the water. Can it be said that the legislature exercised its solemn and sovereign power for the benefit of fish sufficiently acrobatic to scale such heights?

The act cannot be viewed as so definitely stating a purpose as to justify a judicial amendment of it by construction. It must be read as it is written. In using the word "covered" the legislature attached no limitations thereon, such as "partially," "substantially" or otherwise. Taken in its plain and ordinary meaning, it means "wholly" covered, not necessarily to the last fraction of an inch but at least to the extent where an opening is not a mere subterfuge. There was no showing that an opening eight feet square in the top of the net is not ample to permit any known fish in the named waters to escape from it or to otherwise fulfil any imagined purpose of the act.

If the legislature intended to probit the use of such a net as defendant's, it would and could easily have so provided.

The net was not in violation of the statute. The judgment should be set aside and defendant discharged.